FRANK LEONARD LAPORT, Plaintiff-Appellant, v. LAKE MICHIGAN MANAGEMENT COMPANY, INC., a/k/a Pizza Hut, Defendant-Appellee.

First District (6th Division)   No. 1—90—3285

Opinion filed December 27, 1991.

Lane & Munday, of Chicago (John Munday, of counsel), for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (John P. Prusik and Russell P. Veldenz, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

The subject of this appeal is a personal injury action resulting from a fall in a restaurant bathroom. The case was tried before a jury which returned a verdict in defendant's favor. The issues on appeal are: (1) whether the trial court erred in denying plaintiff's motion for a directed verdict and judgment notwithstanding the verdict on the issues of defendant's negligence and plaintiff's contributory negligence;

(2) whether the trial court erred in refusing to instruct the jury on Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1981) (IPI Civil 2d) based on defendant's failure to call the district manager as a witness as well as its failure to produce relevant inspection reports; and (3) whether the trial court erred in applying the substantive law of Wisconsin rather than Illinois to the facts of this case. We affirm.

The personal injury at issue arose from an incident which occurred on July 1, 1991, in the men's bathroom of a Pizza Hut restaurant (Pizza Hut), in Sturgeon Bay, Wisconsin. The bathroom contained a toilet which was located in a 4½- by 5-foot toilet stall with a door that opened out into the bathroom. Upon arriving at the Pizza Hut, plaintiff entered the toilet stall, hit his foot on a jagged pipe protruding from the floor and fell forward, injuring his arm.

The protruding pipe had been part of a railing for use by the handicapped. Prior to the incident, vandals had torn the railing from the wall of the stall leaving a portion of it protruding from the floor. Plaintiff testified that the pipe extended six to eight inches from the floor and bent 45 to 50 degrees toward the right of the toilet. However, Elizabeth Ullman, the manager of Pizza Hut, and Bonnie Potter, the assistant manager, testified that the broken pipe only extended one inch from the floor, 12 to 13 inches to the left and slightly in front of the toilet base. Plaintiff, in his brief, described the bathroom as dimly lit, but Ullman and Potter testified that there was a 48-inch fluorescent light over the sink and a 100-watt light bulb hanging from the ceiling of the toilet stall. The evidence at trial established that both lights were working on the day of the incident. While both Ullman and Potter also testified that Howard Walter, the district manager of Pizza Hut at the time of the incident, had been informed of the broken pipe in the men's bathroom, their testimony was inconsistent. Ullman stated that the pipe had been broken six days before the plaintiff's fall, whereas Potter stated that the pipe had been broken for about a month. Potter stated that Walter had come to Pizza Hut on at least two occasions prior to the incident to inspect the restaurant and that he had seen the broken pipe and noted it in his inspection report. According to Ullman's testimony, she and the cook at Pizza Hut unsuccessfully tried to remove the broken pipe prior to the incident at issue. Immediately after plaintiff's accident, Walter was notified. He came to the restaurant and removed the broken pipe from the floor.

Ullman testified that Walter continued to work for Pizza Hut for four years after the accident, but at the time of the trial he had not been with the restaurant for several years. She also stated that it had

been Walter's practice to make inspection reports of the condition of the premises and document anything unusual, but that the reports were only retained for two years.

At the conference on jury instructions, the trial judge determined that the substantive law of Wisconsin would apply because the allegedly negligent conduct and injury occurred in Wisconsin, defendant's principal place of business was Wisconsin and it was served in Wisconsin. The jury returned a general verdict in defendant's favor and this appeal followed.

Plaintiff first contends that the trial court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict (judgment *n.o.v.*) on the issue of defendant's negligence and in denying his motion for a directed verdict on the issue of his contributory negligence. Plaintiff acknowledges the standard established by *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, for determining whether a directed verdict or judgment *n.o.v.* should be granted as "those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick*, 37 Ill. 2d at 510.) However, plaintiff argues that because he was a business invitee, defendant owed him a duty to exercise reasonable care (*Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 859), and that this duty was violated when defendant allowed conditions on the premises to exist which threatened his safety. (*Lovejoy v. National Food Stores, Inc.* (1973), 12 Ill. App. 3d 982, 299 N.E.2d 816.) Plaintiff also claims that where a danger is known to the owner of the premises and hidden from the invitee, the owner has a duty to either remove the danger or give the invitee notice and warning of the peril. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 125 N.E.2d 47.) Plaintiff claims that, similarly, in this case, the broken pipe presented a danger that was known to the district manager, the manager, and assistant manager of the restaurant and that this danger was hidden from the plaintiff until he hit his foot on the jagged edge of the pipe. According to the plaintiff, he has established each element of defendant's negligence by uncontroverted evidence and that any verdict to the contrary based on this evidence should not stand.

■ However, where controverted issues of fact are presented, motions for a directed verdict or a judgment *n.o.v.* must be denied. (*Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 91, 425 N.E.2d 450.) Additionally, the fact that the jury could have drawn different inferences or conclusions from the evidence is

not a basis for setting aside its verdict, and neither the trial court nor reviewing court should sit as a second jury to consider the nuances of the evidence or demeanor and credibility of the witnesses. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 623, 393 N.E.2d 552; *Eckdahl v. Lease-A-Plane International Licensing Corp.* (1979), 69 Ill. App. 3d 864, 870, 388 N.E.2d 62.) Furthermore, even uncontradicted evidence should not be a basis for overturning a jury verdict if the jury might reasonably have doubted the credibility or accuracy of the witnesses who testified. *McClure v. Cywinski* (7th Cir. 1982), 686 F.2d 541.

■ We also note that while an owner or operator has a duty to keep his premises reasonably safe for use by an invitee, the occurrence of an accident standing alone does not establish negligence. (*Horn v. Urban Investment & Development Co.* (1988), 166 Ill. App. 3d 62, 66, 519 N.E.2d 489; *Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 512, 464 N.E.2d 818.) Furthermore, a business invitee has equal responsibility for his own safety, and an owner or operator has no duty to warn of dangers which are open and obvious. *Horn,* 166 Ill. App. 3d at 66-67.

■ In this case, plaintiff's arguments fail to address the contradictory testimony regarding the circumstances of the incident which the jury resolved in defendant's favor. Although the evidence was uncontroverted that there was a broken piece of pipe in the men's bathroom and that the plaintiff sustained an injury to his arm, the plaintiff was the only witness who claimed that the bathroom was dimly lit or that the broken pipe was six to eight inches long and extended 45 to 50 degrees to the right of the toilet base as well as the other circumstances of the incident. The other witnesses testified that there was a fluorescent light in the bathroom, a 100-watt light bulb in the ceiling of the toilet stall and that both lights were on at the time of the incident. There was also testimony that the broken pipe was only one inch in height and that it was to the left and did not extend past the front of the base of the toilet. Potter and Ullman presented testimony, although inconsistent, as to how much time elapsed between the occurrence of the broken pipe and plaintiff's injury. Potter testified that the pipe had been broken for one month before plaintiff's injury and that the district manager was aware of it. However, Ullman stated that the pipe had only been broken six days earlier and that both she and the cook had tried to remove it. Based on this evidence, the jury could have concluded that defendant was not negligent in failing to remove the pipe in the six days that elapsed from the time the pipe had been broken until plaintiff's accident in light of the fact that two employees had tried to remove the pipe prior to the accident

but had been unable to do so. The jury may also have determined that the pipe was only one inch high and not a hazard or was a hazard but was open and obvious rather than one that was hidden. Finally, the jury may have determined that plaintiff was more than 50% negligent. For these reasons, we conclude that, pursuant to the standard set forth in *Pedrick*, the trial court's denial of plaintiff's motions for a directed verdict and judgment *n.o.v.* was not error.

■ Plaintiff next contends that the trial court erred in refusing to instruct the jury that an adverse inference could be drawn because defendant had not presented the testimony of the district manager or produced inspection reports, both of which were material to the issues of the size and appearance of the pipe as well as its ease of removal. The plaintiff requested Illinois Pattern Jury Instruction, Civil, No. 5.01 (2d ed. 1971) (IPI Civil 2d No. 5.01). This instruction is given if the trial court makes a determination that a party, in all likelihood, would have produced a witness or other evidence unless that witness or evidence was unfavorable to that party. (*Myre v. Kroger Co.* (1988), 176 Ill. App. 3d 160, 165, 530 N.E.2d 1122.) "The instruction allows a jury to draw an adverse inference from a party's failure to offer evidence or to produce a witness when: (1) the evidence or witness is under his control and could have been produced through reasonable diligence; (2) the other party did not have equal opportunity to obtain the evidence or witness; (3) the evidence or witness would have been produced if it were favorable; and (4) the party has offered no reasonable excuse for his failure to produce." (*Myre*, 176 Ill. App. 3d at 165.) Whether this instruction is given is within the discretion of the trial court, and its decision will not be reversed absent a showing of an abuse of discretion. *Myre*, 176 Ill. App. 3d at 165.

■ Contrary to the plaintiff's argument that the instruction was warranted, Ullman testified that defendant no longer had control over the district manager because he had not been employed by defendant for several years prior to the trial. Furthermore, in response to plaintiff's request, defendant had produced the last known address of Walter in July 1985. Defendant was also able to offer a reasonable excuse for its failure to produce the inspection reports. At the trial, Ullman testified that, according to company policy, the inspection reports were only retained for two years. Thus, any reports that were produced in 1981 would have been destroyed in the normal course of business before this suit was filed. There is nothing in the record to show that the reports at issue were treated any differently than all of the other inspection reports. We, therefore, conclude that the trial court's refusal to issue IPI Civil 2d 5.01 was not an abuse of discretion.

■ Plaintiff's final contention is that it was error to apply Wisconsin substantive law to this case because defendant, in a prior action, initially objected to Federal diversity jurisdiction, asserting that it was an Illinois resident, and it should not now be allowed to obtain the advantage from its inconsistent claim that it is a Wisconsin resident. Plaintiff cites *Schumacher v. Continental Air Transport Co.* (1990), 204 Ill. App. 3d 432, 562 N.E.2d 300, for the proposition that "[a] party whose conduct contributes to or causes another to commit an irregularity in a judicial procedure cannot later use the irregularity to his advantage." (*Schumacher*, 204 Ill. App. 3d at 434.) Although plaintiff argues that defendant caused an irregularity in the judicial procedure by moving to dismiss the case from the Federal court, the only document in the record which provides information as to what transpired in Federal court is an order providing that after an additional defendant had been dismissed, there was no diversity jurisdiction, "all remaining parties being Illinois residents." The pleading also contains two separate statements by the Federal judge that plaintiff did not contest the lack of jurisdiction. There is no indication from the record as to who caused the dismissal of the suit from the Federal court. Thus, plaintiff's argument that defendant caused an irregularity is only based on his own assertion.

While plaintiff raises the doctrine of collateral estoppel in his reply brief, it was neither asserted below nor mentioned in appellant's initial brief on review. As a result, the argument is waived. (See 134 Ill. 2d R. 341(e)(7); *In re Estate of Fallscher* (1987), 159 Ill. App. 3d 302, 512 N.E.2d 387.) Further, pursuant to our prior discussion, the record does not disclose that defendant ever took an inconsistent position regarding its domicile. Plaintiff's sole submission of authority on this issue, *Raper v. Hazelett & Erdal*, not only fails to lend any support to his argument, but it defeats his position by reiterating the well-established principle that the doctrine of collateral estoppel only applies to a judgment on the merits. (*Raper v. Hazelett & Erdal* (1983), 114 Ill. App. 3d 649, 652, 449 N.E.2d 268.) In addition, the fact that plaintiff did not object to the determination of no diversity jurisdiction also indicates that the plaintiff himself may have contributed to the dismissal of the suit from the Federal court. Because plaintiff is unable to preclude defendant from asserting Wisconsin as its corporate domicile in this court, what remains is a pure choice of law question.

■ Under Illinois choice of law principles, the law of the State where the injury occurred determines the rights and liabilities of the parties unless Illinois has a more significant relationship with the occurrence and with the parties, in which case, Illinois law would be applicable. (*Rosett v. Schatzman* (1987), 157 Ill. App. 3d 939, 943, 510 N.E.2d

968, citing *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) The factors considered in determining which of the two States has the most significant relationship with the occurrence and the parties are: (1) the place of injury; (2) the place of conduct causing the injury; (3) domicile and place of business of the parties; and (4) the place where the parties' relationship is centered. *Rosett*, 157 Ill. App. 3d at 943, citing *Jackson v. Miller-Davis Co.* (1976), 44 Ill. App. 3d 611, 358 N.E.2d 328.

 In applying these principles to the facts of this case, the injury and the conduct causing the injury occurred in Wisconsin. Wisconsin was also the principal place of defendant's business as well as the center of the parties' relationship. The domicile of the plaintiff was Illinois, and while the Federal court made a finding that defendant was an Illinois resident, we find no basis in the record for this determination. Although the defendant's domicile was never established, the trial court, in a proper exercise of discretion, considered all of these factors and determined that Wisconsin had a more significant relationship to both the occurrence and the parties. We agree.

Although plaintiff cites *Ingersoll* (46 Ill. 2d 42, 262 N.E.2d 593) and *Blazer v. Barrett* (1973), 10 Ill. App. 3d 837, 295 N.E.2d 89, in support of his argument that Illinois law should be applied, neither case supports his argument. While *Ingersoll* and *Blazer* affirmed the trial court's determination that Illinois law should be applied, both courts' rulings were based on the four-part "significant relationship" test. In this case, the same factors were applied with different results. In *Ingersoll* and *Blazer* both parties were Illinois residents, and the occurrence of the accident just beyond the border of Illinois was fortuitous. In this case, the domicile of defendant was not established. Furthermore, not only was there no evidence in the record on appeal for the Federal court's determination that defendant was domiciled in Illinois, but the plaintiff alleged in his circuit court complaint that defendant was a foreign corporation, "organized and existing under the laws of Wisconsin." In addition, the occurrence of the injury in this case was not fortuitous but occurred in a restaurant which was owned and operated in Wisconsin.

For the aforementioned reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.