MARY LaBOLLE *et al.*, Plaintiffs-Appellants, v. METROPOLITAN SANITARY DISTRICT *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—3666

Opinion filed July 10, 1992.

Edward J. Burke, Carmen L. Fosco, and Karen J. Palmer, all of Burke, Smith & Williams, Chartered, of Chicago, for appellants.

James B. Murray and Robert L. Abraham, both of Chicago, for appellees Sanitary District Employees' and Trustees' Annuity and Benefit Fund, James Kennedy, Allan Crowther, Gloria Majewski, John J. Boyle, and Nellie Jones.

Jerome H. Torshen, Mark K. Schoenfield, and Zoran Dragutinovich, all of Torshen, Schoenfield & Spreyer, Ltd., of Chicago, for other appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This is an appeal by plaintiffs Mary LaBolle, Mary O'Donnell, and Cathy Vine from the entry of summary judgment in favor of defendants Metropolitan Sanitary District (MSD), the MSD credit union, and the Sanitary District Employees' and Trustees' Annuity and Benefit Fund.

Plaintiff LaBolle began working for the MSD in 1953, and from 1953 until 1961, she divided her work time between MSD and the MSD credit union. In 1961, LaBolle became a full-time employee of the MSD credit union and soon thereafter, plaintiffs O'Donnell and Vine were also hired as full-time employees of the MSD credit union. On November 25, 1987, plaintiffs brought a nine-count complaint against defendants, alleging that they should be allowed to participate in the Sanitary District Employees' and Trustees' Annuity and Benefit Fund. On November 15, 1990, the trial court granted defendants' motions for summary judgment as to counts I (declaratory judgment), II (estoppel), IV (section 1983), VI (fraud), VII (breach of fiduciary duty), VIII (negligence) and IX (contract). On appeal, we must determine whether the trial court erred in granting summary judgment in favor of defendants on each of these counts. (Counts III and V were previously dismissed and plaintiffs do not appeal that dismissal.)

Before addressing the merit of this appeal, we must first address defendants' motion to dismiss this appeal for lack of jurisdiction which has been taken with this case. On December 13, 1990, plaintiffs filed

a motion for leave to file a first amended complaint requesting leave to file their first amended complaint *instanter* pursuant to section 2—1005(g) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)), and requesting the trial court to vacate the order granting summary judgment as to counts II, VI, VII, and IX of the complaint. Defendants also requested the court to enter final and appealable language stating that there is no just reason for delaying enforcement or appeal of the November 15, 1990, order granting summary judgment on counts I, IV, and VII, and the order of February 23, 1988, dismissing counts III and V. In the alternative, plaintiffs requested the court to grant them leave pursuant to section 2—616 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—616) to file their first amended complaint to conform the pleadings to the facts and arguments adduced in plaintiffs' oral and written responses to the motions for summary judgment.

On December 14, 1990, plaintiffs filed their notice of appeal from the November 15, 1990, trial court order granting defendants' motion for summary judgment. On December 26, 1990, the trial court entered an order striking plaintiffs' motion for leave to file a first amended complaint, finding that plaintiffs, having filed a notice of appeal, divested the trial court of all jurisdiction over this case.

On June 27, 1991, defendants filed motions before the appellate court requesting this appeal be dismissed for lack of jurisdiction because the motion for leave to file a first amended complaint filed by plaintiffs on December 14, 1990, was a post-trial motion which nullified the notice of appeal filed by the plaintiffs on December 15, 1990.

■ The parties focus their arguments on whether plaintiffs' motion for leave to file a first amended complaint was in fact a motion to amend the complaint or was actually a post-trial motion. Plaintiffs rely on the rule that a notice of appeal deprives a trial court of jurisdiction to allow amendment to the pleadings. (*Brehm v. Piotrowski* (1951), 409 Ill. 87, 98 N.E. 725.) Defendants, in turn, base their argument on the rule that when a timely post-trial motion has been filed, a notice of appeal filed before entry of the order disposing of the last pending post-trial motion has no effect. (107 Ill. 2d R. 303(a).) However, in determining whether we have jurisdiction to hear this appeal, it is not necessary for us to decide whether plaintiffs' motion was in fact a motion to amend the complaint or actually a post-trial motion. What we find significant is the fact that the trial court never considered the merits of plaintiffs' motion. In order to avoid mooting plaintiffs' appeal, the trial court administratively struck plaintiffs' motion. Under these circumstances, it would be unreasonable to require plain-

tiffs to file a new notice of appeal in order to preserve the appellate court's jurisdiction. Therefore, based on the facts of this particular case, we find this matter to be properly before this court.

We now turn to the merits of plaintiffs' appeal. A motion for summary judgment is to be granted where the pleadings, depositions, admissions and affidavits on file show no genuine issue of material fact exists and that the party is entitled to summary judgment as a matter of law. (*Kniffin v. Kniffin* (1983), 119 Ill. App. 3d 106, 456 N.E.2d 659.) To determine the presence of material fact, courts must construe the pleadings, depositions, admissions, exhibits and affidavits on file strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) The granting or denying a motion for summary judgment is not discretionary (*Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 494 N.E.2d 830), and the *de novo* standard of review is applied. (*Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083.) Applying these principles, we believe that the trial court properly granted summary judgment on all remaining counts of plaintiffs' complaint.

■ In count I of their complaint, plaintiffs seek the entry of a judgment declaring that they are employees of the MSD and are entitled to the same pension rights as any other MSD employee under the MSD pension fund. Plaintiffs argue that they are entitled to participate in the pension fund due to the MSD's purported control of the MSD credit union. We disagree. Absent any applicable statutory definition, common law principles should be relied on to determine whether an employment relationship exists. (*Short v. Central States, Southeast & Southwest Areas Pension Fund* (8th Cir. 1984), 729 F.2d 567; see *Kelley v. Southern Pacific Co.* (1974), 419 U.S. 318, 42 L. Ed. 2d 498, 95 S. Ct. 472.) However, we need not turn to the common law principles in this case, since the legislature has spoken clearly in establishing who is entitled to participate in the MSD pension fund.

Section 13—101 of the Pension Code provides that only "employees" qualify for a pension. Section 13—101 provides:

"In each sanitary district organized under 'An Act to create sanitary districts ***' [(Ill. Rev. Stat. 1989, ch. 42, par. 320 *et seq.*)] and including within its territorial limits two or more cities, villages, or towns having a total population exceeding 1,000,000 inhabitants, a Sanitary District Employees' and Trustees' Annuity and Benefit Fund shall be created, set apart, maintained and administered, in the manner prescribed in this Article for the benefit of the *employees* herein designated and

their beneficiaries." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 108½, par. 13—101.)

The MSD pension fund, therefore, is expressly limited in its application to employees. The term "employee" is defined by the Pension Code as:

"(a) Any employee of the sanitary district appointed by civil service certification and appointment under the 'Chicago Sanitary District Act', or any employee exempt from the classified civil service including any person absent from such position due to assignment to any other position for work in the sanitary district; (b) temporary employees of the sanitary district; (c) all appointed officers or acting officers; (d) any employees of the board; and (e) any trustee of the sanitary district who elects to participate in the fund within 90 days after becoming a trustee.

No person shall be an employee hereunder whose duties will not ordinarily permit 120 days of service during a calendar year." (Ill. Rev. Stat. 1989, ch. 108½, par. 13—108.)

Plaintiffs are employees of the MSD credit union, not the MSD, and since MSD credit union employees are not included within the express statutory definition of employee, they are not entitled to participate in the MSD pension fund.

In light of our determination that plaintiffs are not MSD employees and thus not entitled to MSD pension rights, we must also reject plaintiffs' claim that, as employees of MSD, they have been deprived of their property interest in the MSD pension. It necessarily follows that since plaintiffs are not employees of MSD, they have not been deprived of their property rights guaranteed by the fourteenth amendment (U.S. Const., amend. XIV) and summary judgment was thus properly granted as to count III of plaintiffs' complaint.

■ Plaintiffs next maintain that summary judgment was improperly granted on count II of their complaint since a genuine issue of material fact remains as to whether the MSD engaged in conduct which estops it from denying that plaintiffs are entitled to participate in the MSD pension fund. We, however, find no merit to this contention. In order to state a cause of action for equitable estoppel, there must be words or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts. (*Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 533 N.E.2d 885.) Here, plaintiffs argue that the MSD represented to plaintiffs that, as MSD credit union employees, they could not be legal participants in the MSD pension fund without a legislative amendment to the MSD pension fund act. However, our review of the record reveals that in

their depositions, plaintiffs stated that they were never actually told that it was legally impossible for them to be covered by the pension fund. Furthermore, even if defendants had made the statement that plaintiffs could not legally participate in the pension fund without an amendment to the Pension Code, this statement is true and therefore does not support an action for equitable estoppel.

Plaintiffs also maintain that they were continually given promises from the MSD that they would receive pension benefits. Plaintiffs claim that they continued working for the credit union in reliance on these promises. However, the record reveals that various attempts were made by the defendants to get plaintiffs a pension, but those attempts were either rejected by the pension laws commission, the credit union board or the plaintiffs. Therefore, these statements, even if made by defendants, do not qualify as misrepresentation or concealment. Accordingly, plaintiffs' claim for equitable estoppel must fail.

We also note that courts are reluctant to grant estoppel against a governmental body and therefore have held that:

> "For a municipality to be estopped, there must have occurred an affirmative act on the part of the municipality which induced substantial reliance thereon by the litigant, but such act must be the act of the municipality itself (such as legislation by a city council) rather than merely the unauthorized act of a ministerial officer or a ministerial representation." (*Diakonian Society v. City of Chicago Zoning Board of Appeals* (1978), 63 Ill. App. 3d 823, 828, 380 N.E.2d 843.)

(*VonBokel v. City of Breese* (1981), 100 Ill. App. 3d 956, 427 N.E.2d 322.) This principle is as applicable to a promissory estoppel count as it is to an equitable estoppel count.

The statements allegedly made to Vine and O'Donnell were made by representatives of the credit union and, as such, these statements cannot be attributed to the MSD. Since there is no evidence of an affirmative act by the municipality itself, the circuit court properly found that the statement alleged cannot form the basis of a promissory estoppel claim. Similarly, although plaintiff LaBolle claims to have been promised by her boss at the MSD that she would eventually get pension benefits, this future promise is simply insufficient to bind the MSD, a governmental entity.

■ Plaintiffs next maintain that summary judgment was improperly granted as to count VI because there is a genuine issue of material fact as to whether MSD and the credit union engaged in conduct and representations constituting fraud. Plaintiffs' fraud count is based on defendants' alleged comments that it was legally impossible for

plaintiffs to participate in the MSD pension fund and that plaintiffs would be given the same pension benefits as all other MSD employees.

An action for fraud requires a showing of: (1) a false statement of material fact by defendant; (2) known or believed to be false by the party making it; (3) intended to induce the other party to act; (4) action by the other party in reliance on the statements; and (5) damage to the other party resulting from the reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599.) Like the previous count of estoppel, even if defendants did comment that it would be legally impossible for plaintiffs to be covered by the MSD pension fund, because the plaintiffs were employees of the credit union and not employees of MSD, this statement is true and therefore cannot be the basis of a fraud action. See *Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872.

Furthermore, even if defendants did state that they would try to get plaintiffs a pension like that of the MSD employees, that statement cannot constitute the basis for a fraud action. While the general rule is that an action for fraud may not be based on a false representation or intention of future conduct, there is an exception where the false promise or representation of future conduct is part of a scheme employed to accomplish the fraud. (*Donnelly v. Washington National Insurance Co.* (1985), 136 Ill. App. 3d 78, 482 N.E.2d 424.) The circuit court correctly noted that this exception to the promissory fraud rule was inapplicable here, because

"this particular complaint does not make the case out for a scheme or device to defraud. It merely says that the two directors of the MSD Credit Union [k]new or should have known of the false and misleading nature of the representations to the plaintiff ***."

We agree with the circuit court that "[i]t certainly is not evident from your pleadings, and it's not evident from any evidentiary material that this is part of a scheme or device to defraud."

■ Plaintiffs' next contention is that summary judgment was improperly granted as to count VII because there is a genuine issue of material fact as to whether defendant credit union breached its fiduciary duty to plaintiffs. While plaintiffs argue that the MSD credit union breached its fiduciary duty to plaintiffs by failing to make plaintiffs members of the MSD pension fund, summary judgment was properly granted on this count since the MSD credit union had no power to make the plaintiffs employees of the MSD, and therefore, could not have breached any duty.

■ Plaintiffs next maintain that summary judgment was improperly granted as to count VIII because the court improperly held that defendants could not be held accountable for negligent misrepresentation. We disagree. In Illinois, where damages for physical injury are not sought, there is no cause of action for negligent misrepresentation unless the defendant is in the business of supplying information for the guidance of others in their business transactions with third parties. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580; *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 453 N.E.2d 8.) Here, plaintiffs have not alleged physical injury and do not seek damages for such injury. Furthermore, it is undisputed that the credit union defendants are not in the business of supplying information for the guidance of others in their business with third parties.

■ Plaintiffs' last contention is that summary judgment was improperly granted as to count IX because there is a material issue of fact as to whether the MSD credit union breached its contract to provide plaintiffs with coverage under the MSD pension or a similar pension administered by the MSD credit union. Plaintiffs rely on *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318, where the supreme court held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." The court in *Duldulao* stated:

"[T]he policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

Applying the principles set forth in *Duldulao*, we find that no contract was formed since the statements made by defendants did not constitute a clear promise that would lead plaintiffs to reasonably believe that an offer had been made. The credit union's general statement that it would attempt to provide plaintiffs with coverage or participation in the MSD pension fund is too vague a promise to be enforced. See *Torres v. Amoco Corp.* (1989), 186 Ill. App. 3d 135, 542 N.E.2d 154 (statements were too indefinite to reasonably be interpreted as an offer by plaintiff).

In conclusion, we note that if plaintiffs were in fact told that the only way the necessary legislative amendment would take place was if plaintiffs gave $2,000 to the MSD commissioner, it is truly unfortunate that plaintiffs were subjected to such reprehensible behavior. Such evidence, however, would not detract from the fact that plaintiffs knew they were not MSD employees and were not covered by the MSD pension fund. Accordingly, for the reasons set forth above, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and GORDON, JJ., concur.