**Gerrie STRAKA, Bonita Lumbrazo, and Mary Kay McSheffery, Plaintiffs,**

v.

**Bruce FRANCIS, Lincoln Francis, and Executive Flight Management/Trans American Charter, Ltd., Defendants.**

No. 94 C 3236.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 14, 1994.

---

Steven Michael Levin, Steven M. Levin & Associates, David B. Wilson, Levin & Perconti, Chicago, IL, for plaintiffs.

Bruce R. Alper, Janet Marie Hedrick, Michael Paul Nicolai, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiffs Gerrie Straka ("Straka"), Bonita Lumbrazo ("Lumbrazo"), and Mary Kay McSheffery ("McSheffery") filed this cause of action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Sec. 2000e *et seq.*, the Civil Rights Act of 1991, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"). Defendants in the case are Executive Flight Management/Trans American Charter, Ltd. ("Executive Flight"), and Lincoln and Bruce Francis (collectively, "the Individual Defendants"), who are pilots employed by and shareholders of Flight Management. Lincoln Francis is the President of the company and son of Bruce Francis. Plaintiffs allege that Defendants' acts of sexual harassment and age discrimination created a hostile and intolerable work environment causing Plaintiffs' resignation and constructive discharge on April 11, 1993. Defendants counter-claim that Plaintiffs' resignation caused Flight Management to lose business and they therefore seek damages in the amount of $350,000 and such other relief as this Court deems just and proper.

Defendants filed a partial motion to dismiss the Individual Defendants, claiming that individual employees of an employer may not be held personally liable under Title VII or the ADEA. Defendants also filed counterclaims including: tortious interference with a contract between Executive Flight and a client, David D. Linnemeier ("Linnemeier"), Director of Aviation for Huizenga Holdings, Inc. (Count I); breach of an employment contract alleged to exist between Executive Flight and Plaintiffs (Count II); promissory estoppel (Count III); and equitable estoppel (Count IV). Plaintiffs filed a motion to dismiss Defendants' counterclaims.

For the reasons stated below, the Court grants Defendants' partial motion to dismiss, and Plaintiffs' motion to dismiss Counts I, II, III, and IV of Defendants' counterclaims.

### BACKGROUND

Executive Flight is an Illinois corporation that provides charter airline passenger service throughout the United States. Plaintiffs are female residents of Illinois who were hired as flight attendants in September 1992 by Executive Flight. Plaintiffs were hired to provide flight attendant services for sports teams and were assigned to work pursuant to a 1992 contract negotiated in Florida between Executive Flight and Linnemeier for the Florida Marlins ("Marlins"). The contract was to provide charter jet service for the team during the 1993 professional baseball season. According to Defendants, Plaintiffs knew the contract with Linnemeier was the company's largest, that the Marlins were their most publicly recognized client, and that they were being hired and agreed to work on flights for sports teams.

Flight attendants for the Marlins' flights required training for a specially equipped DC-9 aircraft. Accordingly, Plaintiffs were trained between September 1992 and April of 1993. Their first flight with the Marlins occurred on April 1, 1993; it originated in Jacksonville, Florida and ended in Fort Lauderdale, Florida. On April 11, 1993, Plaintiffs were scheduled to work as attendants on a Marlins flight which was to depart Fort Lauderdale at 5:30 p.m. en route to San Francisco, California. Federal Aviation Administration ("FAA") regulations require two certified flight attendants on all flights, and the contract between Executive Flight and the Marlins included provision of three certified attendants on each flight. According to Defendants, Plaintiffs were aware of such regulations.

Executive Flight flew Plaintiff attendants from Chicago to Florida on April 9, 1993, two days prior to the scheduled departure. On April 10, Plaintiffs performed various routine duties in preparation for the April 11th flight, including catering arrangements and cabin preparation. According to Defendants, an unarranged congregation of Executive Flight employees and officers occurred during the evening of April 10 at a restaurant in Ft. Lauderdale. At this impromptu gathering were: Plaintiffs; Lincoln Francis, the scheduled captain for the April 11 Marlins flight; Bruce Francis; Steve Gaines, the scheduled co-pilot for the flight; Andy Townsend, a maintenance mechanic; and Linnemeier and his wife. Defendants allege that throughout the evening and beyond 9:30 p.m. Plaintiffs gave no indication of an intention to not work the Marlins flight the following day.

At about 2:00 p.m. on April 11, 1993, Plaintiffs telephoned Executive Flight's Chicago, Illinois office to provide notice that they were resigning. At some point during that same day, Plaintiffs also telephoned the caterer scheduled to provide meal service on the Marlins flight in an attempt to cancel the order. According to Defendants, Plaintiffs were aware of a provision in the Executive Flight–Marlins contract that required meal service, and that their resignation and cancellation of the catering order would prevent or substantially impede Executive Flight in discharging its contractual responsibilities.

Plaintiffs allege their continued employment was conditioned upon being subjected to repeated incidents of sexual harassment and age discrimination either participated in directly or condoned by the Defendant company through its officers, managers, and employees. Such incidents include alleged comments regarding Plaintiffs' physical appearance and attire, a lewd and lascivious gift from Defendant Bruce Francis to Plaintiff Lumbrazo, comments of a sexual nature regarding Lumbrazo's physical appearance and that Plaintiffs were too old to be flight attendants, suggestions that Plaintiffs should be "more friendly" with the players during flights and "not act like the players' mothers," and lewd and lascivious comments regarding sexual activity with Plaintiff Lumbrazo.

Plaintiffs further claim the repeated acts of sexual harassment and age discrimination caused their constructive discharge from work as of April 11, 1993; and that they, therefore, at that time telephoned their notice of resignation to Flight Management in Chicago.

## DISCUSSION

### I. DEFENDANTS' PARTIAL MOTION TO DISMISS

The Court will first address Defendants' motion to dismiss Individual Defendants Bruce and Lincoln Francis as defendants in this case. A Complaint should not be dismissed unless the court concludes beyond a doubt that plaintiffs can prove no set of facts to support their claim which would entitle them to relief. *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, the court assumes the truth of all well-pled allegations and makes all possible inferences in favor of the non-movant. *Falk v. U.H.H. Home Servs. Corp.*, 835 F.Supp. 1078, 1079 (N.D.Ill.1993). *Individual Liability under Title VII and the ADEA*

The question before the Court is a narrow one: whether individual employees of an employer may be held personally liable under the ADEA or Title VII for conduct or omissions constituting sexual harassment or fostering a hostile work environment. As a general rule, this Court, a majority of the courts in this district, the Seventh Circuit, and the Supreme Court have held that individual employees, regardless of their rank or authority within the employment entity, are not personally liable for conduct or omissions constituting sexual harassment or age discrimination under Title VII or the ADEA. *See, e.g., Hamilton v. City of Chicago*, 93 C 3342, 1993 WL 535351, 1993 U.S.Dist. LEXIS 17889 (N.D.Ill. Dec. 13, 1993); *Pelech v. Klaff–Joss, LP*, 828 F.Supp. 525, 529 (N.D.Ill.1993); *Pommier v. James L. Edelstein Enters*, 816 F.Supp. 476, 480–81

(N.D.Ill.1993); *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 410 (N.D.Ill.1991); *Shager v. Upjohn,* 913 F.2d 398, 404 (7th Cir.1990); *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985).

Title VII prohibits employers from discriminating against individuals on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e–2e(a), (b). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, *and any agent of such a person . . .*" 42 U.S.C. § 2000e(b) (emphasis added). The ADEA limits liability to employers with 20 or more employees and similarly defines "employer" to include "agent[s]" thereof. 29 U.S.C. § 630(b).

Courts have interpreted this language differently. In particular, they have divided on whether, by using the term "agents" of employers in the definition of "employer" Congress intended to: 1) hold only employers liable for the illegal acts of their agents; 2) hold only the agents or employees liable for their individual illegal acts of discrimination; or 3) hold either the employer, the employee, or any combination thereof liable for discriminatory practices under Title VII and the ADEA. *See e.g., Shager v. Upjohn Co.,* 913 F.2d 398 (7th Cir.1990).

Plaintiffs attempt to rely on the third proposition by citing to *Tafoya v. Adams,* 612 F.Supp. 1097, 1104 (D.C.Colo.1985), in which the court noted, "Officials and supervisors having responsibility and power to employ personnel and to control their conditions of employment have been held subject to Title VII." [1] The *Tafoya* court held that a supervisor who participated in managerial decisions had control over employment conditions, was in a position of responsibility and, therefore, an "agent" and "employer" within the meaning of Title VII.[2] *Id.* at 1105.

This Court recently made clear that "[A]n official-capacity suit is in all respects other than name to be treated as a suit against the entity." *Hamilton,* 1993 WL 535351 at *2, 1993 U.S.Dist. LEXIS 17889 at *5 (*citing, Kentucky v. Graham,* 473 U.S. at 165, 105 S.Ct. at 3104–05). Another district court in the Northern District held similarly that a plaintiff was precluded from holding her supervisors personally liable under Title VII or the Equal Pay Act. *Pommier v. James L. Edelstein Enters.,* 816 F.Supp. 476, 480–81 (N.D.Ill.1993). The court reasoned that to the extent such a supervisor is an "agent" of the employer, such individual stands only as a surrogate for the employer and, hence, may be held liable only in their official capacity. *Pommier,* 816 F.Supp. at 480–81. Similarly, the Weiss court recognized that the damages available under Title VII are damages which an employer, not an individual, would generally provide—i.e. "back-pay, reinstatement, etc." *Weiss* at 411.

Plaintiffs argue that this rationale, and therefore the line of cases supporting it, is inapplicable to their claim because they are seeking compensatory, punitive and non-pecuniary damages made available under the 1991 civil rights amendments. *See e.g.,* 42 U.S.C. § 1981a (1992 Supp.). The Ninth Circuit rejected this argument in *Miller* in favor of reliance on the alternative rationale that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable Congress intended to allow civil liability to run against individual employees."

---

1. *See e.g., Owens v. Rush,* 636 F.2d 283 (10th Cir.1980); *Gay v. Board of Trustees,* 608 F.2d 127 (5th Cir.1979); *Goodman v. Board of Trustees,* 511 F.Supp. 602 (N.D.Ill.1981); *Kelly v. Richland School Dist. 2,* 463 F.Supp. 216 (D.S.C. 1978); *Manley v. Mobile County, Ala.,* 441 F.Supp. 1351 (S.D.Ala.1977); *Padilla v. Stringer,* 395 F.Supp. 495 (D.N.M.1974); *Byron v. University of Florida,* 403 F.Supp. 49 (N.D.Fla.1975); *Schaefer v. Tannian,* 394 F.Supp. 1128 (E.D.Mich.1974); *Compston v. Borden, Inc.,* 424 F.Supp. 157 (S.D.Ohio 1976); *Curran v. Portland Superintending School Committee,* 435 F.Supp.

1063 (S.D.Maine 1977); *Jeter v. Boswell,* 554 F.Supp. 946 (D.W.Va.1983).

2. At least one court in this district has supported Plaintiffs' argument. In *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769 (N.D.Ill.1993) (*cited in, Pelech,* 828 F.Supp. at 529), Judge Moran held that a plaintiff bringing a Title VII claim could proceed against an individual employee. However, the trend in the Northern District disfavors this position.

*Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587, n. 2 (9th Cir.1993). The court held further that because of the similarities in the Title VII and ADEA statutory schemes, the rule that individual defendants cannot be held liable for damages under Title VII is applicable to suits under the ADEA.[3]

▮ This Court declines to hold that employees are *per se* immune from all personal liability resulting from their individual discriminatory conduct or omissions under Title VII or ADEA claims. The Seventh Circuit and the United States Supreme Court have rejected erection of such a wall of immunity. *See e.g., Shager* at 405; and *Meritor* 477 U.S. at 72, 106 S.Ct. at 2408. The Supreme Court in interpreting the definition of "employer" in Title VII and the ADEA has held that it "surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Meritor* at 72, 106 S.Ct. at 2408. As *Shager* articulates, the threshold question is whether the Defendant employees were acting within the scope of their authority. *Id.*[4]

▮ Like the defendant supervisor in *Shager* who fired a subordinate allegedly on the basis of age, Lincoln and Bruce Francis, as company officials, had the sufficient "appearance of authority" necessary to impute liability to the employer entity. *Id.* The Individual Defendants in this case are not necessary parties to the Title VII or ADEA actions because the full measure of available relief is generally obtainable against the remaining corporate Defendant. *See, e.g.*

*Pommier*, at 478, 481. The Court therefore grants Defendants' partial Motion to Dismiss Plaintiffs' Title VII and ADEA claims against Individual Defendants Bruce and Lincoln Francis.

## II. *PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS*

In order to address Defendants' counterclaims, this Court must first address the issue of choice of law. Executive Flight proposes that the Court should apply Florida law to the counterclaims because the company's contract with the Marlins was negotiated in Florida, the first flight of each Marlins trip was to originate in Florida, and the alleged wrongful conduct (i.e. Plaintiffs' resignation and related acts) occurred in that State. Plaintiffs argue that Illinois law should govern the case.

▮ The Court's analysis, under the principles first announced in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must be based on relevant State law. *Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Cir.1977). Federal courts apply the choice-of-law test applicable to the State in which the Court sits. *Kafka v. Bellevue Corp.*, 999 F.2d 1117, 1121 (7th Cir.1993) (*citing, Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)); *H.B. Fuller Co. v. Kinetic Systems, Inc.*, 932 F.2d 681, 685 (7th Cir.1991). Under Illinois choice-of-law principles, the court applies the law the parties understood would govern a case. In the absence of an expression of the parties' understanding, which is the situation

---

**3.** Although the Court refuses to adopt a per se rule against holding individuals personally liable in *any* case given the Seventh Circuit's dicta in *Shager*, 913 F.2d at 405, and the Supreme Court's language in *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), *see infra* note 3, the Court rejects the so-called *House* distinction between the ADEA and Title VII drawn by some courts. *House v. Cannon Mills Co.*, 713 F.Supp. 159, 160 (M.D.N.C.1988). *House* distinguished between Title VII and the ADEA because of the difference in the scope of relief (i.e., at the time, liquidated damages were available for willful violations of the ADEA, but not under Title VII) and because the ADEA incorporates the remedies and procedures of the Fair Labor Standards Act ("FLSA"). Since Congress has amended Title VII to allow

compensatory and punitive damages in a way that indicates individuals aren't liable for those damages under Title VII, and since the ADEA incorporates only selective provisions of the FLSA, but not specifically the FLSA definition of "employer," we find that the ADEA and Title VII claims in this cause of action should be treated similarly regarding available remedies and appropriate defendants. *See Miller* at 588, n. 3.

**4.** "If one low-level employee makes sexual advances to another, their conduct is so unrelated to the employer's business that the employer will ordinarily be excused from liability under the doctrine of respondeat superior; the employer's own fault must be shown." *Shager*, at 405.

in this case, courts apply a most-significant-relationship test to determine which State law should govern. *Kafka* at 1121; *Diamond State Ins. Co. v. Chester–Jensen Co.*, 243 Ill.App.3d 471, 183 Ill.Dec. 435, 445–46, 611 N.E.2d 1083, 1093–94 (1993); *Laport v. Lake Michigan Mgmt. Co.*, 252 Ill.App.3d 221, 192 Ill.Dec. 41, 46, 625 N.E.2d 1, 6 (1991); *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970).

■ The Illinois Supreme Court has held that the choice-of-law decision may be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the "general contract." *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975); Courts should also consider the relevant policies and interests of the forum and other interested States. *Diamond State*, 243 Ill. App.3d at 486, 183 Ill.Dec. 435, 611 N.E.2d 1083; *see also*, Restatement (Second) of Conflicts of Laws § 188 (1971).

In *Kafka*, an Illinois investor brought suit against California mortgage brokers for failing to honor alleged guarantees on promissory notes involving property located in California. The parties had not explicitly designated which body of law was to govern should a case arise. Emphasizing that the investments were made in California and the guarantees, if made, were transacted in California, the court held that under Illinois choice-of-law principles, California law governed the parties' dispute. *Kafka*, at 1121.

In *Diamond State Insurance*, the court held that Illinois law was properly applied to a declaratory judgment action seeking determination that plaintiff had no duty to defend a claim involving a faulty air-conditioning system installed in Illinois for which insurance policies were issued by authorized representatives listing Chicago addresses. *Id.* at 475, 183 Ill.Dec. 435, 611 N.E.2d 1083. The insured, a Pennsylvania corporation which maintained its principal place of business in Pennsylvania but engaged in business in other states, sought to have Pennsylvania law applied. The plaintiff was a Delaware corporation with its principal place of business also in Pennsylvania. The insurance policies did not contain a choice-of-law clause and the trial court found Illinois had the most significant contacts with the policies given that the policies were issued by Illinois-based representatives, the insured risks were permanently located in Illinois, and an underlying claim was filed in Illinois. *Id.* at 475, 183 Ill.Dec. 435, 611 N.E.2d 1083.

As in *Kafka*, this Court has no indication that the parties at the time of hiring agreed upon what law would govern and, consequently, must apply the most-significant-relationship test.

■ Executive Flight's emphasis on the impromptu gathering at the Ft. Lauderdale restaurant, the scheduled departure and flight preparations conducted by the attendants in Florida, and Plaintiffs' resignation and attempt to cancel the catering order is misguided. Like the insurance policy in *Diamond Insurance* that involved signatures and performances by an insured in Pennsylvania and an insurer in Delaware, yet focused on an agreement and business relationship based in Illinois, this case involves an employment agreement and relationship formed and based in Illinois. *See e.g., Diamond Insurance* at 488, 183 Ill.Dec. 435, 611 N.E.2d 1083. Even if the place of performance was to occur predominantly in Florida, which is not clear from the facts presented, the acts in formation of the employment contract, if one exists, occurred by all parties in Illinois, the parties are domiciled in Illinois and must fly from Chicago to Florida prior to scheduled trips, and Plaintiffs' resignation was tendered to the Illinois office. These facts support a conclusion that Illinois is the State with the most significant relationship with the "occurrence and with the parties," as well as with the employment contract from which this litigation arises. *See e.g., Laport*, 192 Ill.Dec. at 46, 625 N.E.2d at 6.

Executive Flight's focus on the negotiations regarding the contract between the company and the Marlins is similarly misguided. Beyond showing the existence of that contract for the purpose of satisfying the elements of the tort of contractual interfer-

ence, the Marlins contract has only a tangential significance to the claims presented by the parties to this case and the employment relationship at issue. In addition, invoking Illinois substantive law in this case is supported by the fact that the underlying litigation, i.e. Plaintiffs federal claim, is filed in Illinois, and that application of Illinois law to Defendant's cross-claims does not appear contrary to the public policies of Florida. *See e.g., Diamond State,* 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083 (1993).

This Court concludes that given that Illinois has more significant contacts with the hiring, training, and agreements made pursuant to the employment relationship at issue in this case, Illinois law should apply in interpreting the substance of any agreements made or breached between the parties and related claims.

### A. *Tortious Interference of Contract— Count I*

 To sustain a claim for tortious interference of a contract or business relationship, the plaintiff, or, in this case, Defendant-counterclaimant Executive Flight, must show: 1) the existence of a valid and enforceable contract between the plaintiff and another, 2) the defendant's awareness of this contractual relationship, 3) defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and 4) damages. *HPI Health Care v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 23, 545 N.E.2d 672, 676 (1989). Both parties agree that elements one, two and four of the above test have been satisfied. Both parties also focus their arguments on whether to satisfy the claim Executive Flight must show that it *fully* breached its contract with the Marlins because of Plaintiffs' conduct. However, case law suggests the pivotal question is whether Executive Flight has sufficiently pled that the Plaintiff flight attendants *intentionally* and *unjustifiably* induced their breach of contract, regardless of severity. *See, Worrick v. Flora,* 133 Ill.App.2d 755, 272 N.E.2d 708, 711 (1971); *HPI,* 131 Ill.Dec. at 24, 545 N.E.2d at 677; and *Mannion v. Stallings &*

*Co.,* 204 Ill.App.3d 179, 149 Ill.Dec. 438, 443–44, 561 N.E.2d 1134, 1139–40 (1990).

 The Restatement provides that one who, without a privilege to do so, induces or otherwise purposefully causes a third person not to perform a contract with another ... is liable to the other for resulting harm. *Worrick,* 272 N.E.2d at 711 (*citing,* 4 Restatement of Torts, chap. 37 § 766). In international interference with contracts cases, courts will recognize a privilege when the defendant was acting to protect an interest which the law deems to be of equal or greater value than plaintiff's contractual rights. *HPI,* 131 Ill.Dec. at 24, 545 N.E.2d at 677; *Mannion,* 149 Ill.Dec. at 444, 561 N.E.2d at 1140. Plaintiff has the burden to plead and prove defendant's interference with a contract was intentional and unjustified and must do more than present mere assertions. The claimant must set forth factual allegations from which it can be inferred that defendant's conduct was unjustified. *Id.*

In *HPI,* the provider of pharmaceutical services and supplies sued hospital management firms and the trustee of bonds issued to finance acquisition of a hospital for tortious interference with a contract. The court held that the plaintiff failed to sufficiently allege the hospital management company's conduct was unjustified where the company was engaged in choosing when and to which creditors payments were to be made. *HPI,* 137 Ill.Dec. at 24, 545 N.E.2d at 677. The court noted that short of totally antagonistic or illegal conduct aimed at inducing a breach of contract, no cause of action existed. *Id.* at 25, 545 N.E.2d at 678. Conclusory statements are insufficient; the plaintiff must show intentional interference. *Id.* Other examples of interests or conduct held to be of equal or greater value than the plaintiff's contractual rights include First Amendment rights to petition government for redress, reporting the unauthorized practice of medicine, evaluations by hired professional consultants, attorneys rendering advice to clients, and corporate officers acting to influence actions of the corporation. *Mannion,* 149 Ill.Dec. at 444, 561 N.E.2d at 1140.

*Mannion* involved an employer's counterclaim for tortious interference with a busi-

ness expectancy, a claim with elements similar to those of interference with a contract. After the plaintiff signed a subcontracting agreement with a third party, plaintiff's employee, who was aware of the agreement, submitted a bid to and ultimately entered an identical contract with the third party. The pivotal issue was whether the plaintiff pled a lack of justification for the interference in light of defendant's claim that he shared patent rights related to the agreement. Finding that the plaintiff had exclusive rights to the patent and the employee had expressed "mere proprietary and economic interests" as justification for interfering with the contract, the court held that the plaintiff employer had sufficiently alleged intentional and unjustified tortious interference.

■ In this case, Executive Flight has not set forth specific facts alleging Plaintiffs resigned with the intent to interfere with Defendant's contract with the Marlins. Executive Flight also has not alleged any facts to show Plaintiffs were unjustified in tendering their resignation, particularly in light of the employment-at-will presumption. Given that Plaintiff's interests were not merely proprietary and economic, that it is not alleged they acted for the exclusive purpose to harm or antagonize Executive Flight, and that the telephone call to the catering service caused no damage, this Court finds that the Defendant-counterclaimant has failed to sufficiently allege the necessary elements of the tort of interference with a contract or business expectancy. Thus, Plaintiffs motion to dismiss Count I is granted.

## B. *Breach of Contract—Count II*

■ Defendant's second counterclaim is for breach of contract, which turns on the threshold question of whether the employment relationship between Executive Flight and its former employee flight attendants was of such a nature as to overcome a presumption of employment at will. The question of the existence of a contact is a matter of law for determination by the court. *Bennett v. Evanston Hospital*, 184 Ill.App.3d 1030, 133 Ill.Dec. 113, 540 N.E.2d 979 (1989).

■ Absent a violation of clearly mandated public policy or a clear understanding to the contrary, employment contracts for indefinite periods are presumed to be terminable at will by either party for any reason or no reason, without cause and without liability. *Id.* at 1031, 133 Ill.Dec. 113, 540 N.E.2d 979 (*citing, Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985)).[5] However, this presumption can be rebutted by the terms of an explicit contract. *Corcoran* at 612. To overcome the presumption, a party must demonstrate that a promise of permanent or fixed-duration employment was clear, definite, and supported by valid consideration. *Id. citing, Lee v. County of Cook*, 862 F.2d 139, 142 (7th Cir.1988); *Lamaster v. Chicago & N.E. Ill. D.C. of Carpenters*, 766 F.Supp. 1497, 1499 (N.D.Ill. 1991). Illinois courts have exhibited a certain degree of strictness when applying the "clear and definite" standard. *Lamaster* at 1504. Expressions of "hopes and intentions," and assertions that must be inferred from circumstances and indirect evidence are insufficient to withstand a motion to dismiss. *Corcoran* at 612; *Lamaster* at 1504.

■ Executive Flight contends that an oral promise by Plaintiffs to provide services for a specific duration on April 11th in exchange for compensation in the form of salary and benefits overcomes the presumption of employment at will and that failure to perform such services constitutes a breach of oral contract. Defendants rely on *Johnson v. George J. Ball*, 248 Ill.App.3d 859, 187 Ill.Dec. 634, 638, 617 N.E.2d 1355, 1359 (1993), in which the court held that a plaintiff's allegations were sufficient to state a cause of action for breach of an oral contract to employ plaintiff "through 1991" (emphasis added). However, the allegations set forth in that case were more specific and compelling

---

5. *See also, Johnson v. George J. Ball, Inc.*, 248 Ill.App.3d 859, 187 Ill.Dec. 634, 617 N.E.2d 1355 (1993); *Payne v. AHFI/Netherlands, B.V.*, 522 F.Supp. 18 (D.C.Ill.1980); *Buian v. J.L. Jacobs and Co.*, 428 F.2d 531 (7th Cir.1970); *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220 (7th Cir. 1991); *Lamaster v. Chicago & N.E. Ill. D.C. of Carpenters*, 766 F.Supp. 1497 (N.D.Ill.1991); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 610 (7th Cir.1989); *Loucks v. Star City Glass Co.*, 551 F.2d 745, 747 (7th Cir.1977).

than those presented here. The party alleging existence of a specific-duration contract in *Johnson* alleged not only that both parties contemplated the project in question to last "through 1991," but also that in reliance on that promise, he left a higher paying position, his wife quit her job, they sold their Michigan home, moved to Illinois, signed a contract to purchase a new home and, therefore, provided adequate consideration for the specific-term employment contract. *Id.* at 637, 617 N.E.2d at 1358. *See also, Buian v. J.L. Jacobs and Co.*, 428 F.2d 531 (7th Cir.1970); *Payne v. AHFI/Netherlands, B.V.*, 522 F.Supp. 18 (N.D.Ill.1980).

In contrast to *Johnson,* Executive Flight fails to allege specific facts evidencing a clear and definite promise or a bargained-for exchange regarding a fixed-term employment contract. The facts as presented by Executive Flight do not support a conclusion that these parties contemplated or specified a contractual duration of one day, April 11. Conclusory statements that Plaintiffs made an oral promise to provide services on a particular day, or were hired at a monthly or annual salary, if no duration is specified, are insufficient to overcome the at-will presumption. *Johnson,* 187 Ill.Dec. at 638, 617 N.E.2d at 1359.

At most, the flight from Chicago to Florida on April 9, the catering and cabin preparations, and the absence of any indication on the evening of April 10 at a restaurant gathering that Plaintiff flight attendants planned to not work April 11 provided Executive Flight with an expectation that the employment relationship would continue. However, absent some facts alleging a mutual, clear and explicit agreement supported by adequate consideration to maintain an employment relationship for a fixed duration, this Court cannot find that the Defendant-counterclaimant in this case has overcome the employment-at-will presumption. In the absence of such a contract for employment, the Court grants Plaintiffs' motion to dismiss Defendant's breach of contract counterclaim.

## C. *Promissory and Equitable Estoppel— Counts III & IV*

In Count III Defendants allege that Executive Flight relied to its detriment on Plaintiffs' unambiguous promise to work the April 11, 1993 flight and that Plaintiffs should be held liable for Executive Flight's reliance expenses. In Count IV Defendants allege that Plaintiffs intentionally misled them to believe the flight attendants intended to work on the April 11 flight. The claims are substantially similar and will be combined for the purposes of this discussion.

Illinois at one time maintained a distinction between promissory estoppel and equitable estoppel, but those doctrines today overlap significantly. *See e.g., Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 n. 3 (7th Cir.1991). To withstand a motion to dismiss a claim for promissory estoppel, one must sufficiently allege: 1) an unambiguous promise by promisor, 2) upon which the promisee would reasonably and foreseeably rely, 3) and upon which the promisee actually relied, 4) with such reliance resulting in damages. Restatement (Second) Contracts § 90(1) (1981); *See also, Geva* at 1223; *Falk v. U.H.H. Home Services Corp.*, 835 F.Supp. 1078 (N.D.Ill.1993); *Quake Cons., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990). Promissory estoppel can be invoked in contract and non-contract settings, the promise may be inferred from words and conduct, and in employment situations the alleged promise need not be for any fixed-duration. *Falk* at 1079–81; *Geva* at 1223. However, Illinois courts have resisted the use of an overly permissive use of promissory estoppel in employment settings as a means to undermine the presumption of employment at will. *Falk* at 1080.

Defendants rely on *Falk* to support their argument and, like the plaintiffs in *Falk,* the only element Plaintiff flight attendants challenge in this case is whether Defendants sufficiently allege an unambiguous promise given their employment-at-will status. In *Falk,* the court held that an employee had sufficiently stated a claim for promissory estoppel where she alleged she was informed that a new position in Chicago would increase her responsibilities and rank in the company, require extensive travel and expand her presence in the entire metropoli-

778

tan area. She met with the Vice President of the company to discuss her potential new job responsibilities, and attached notes from that encounter to her complaint. The plaintiff in *Falk* had moved from Boston, given up a lucrative position and home in order to adopt new responsibilities in Chicago.

The court found that the plaintiff did not sufficiently allege a promise for fixed-term employment sufficient to overcome the employment-at-will presumption. However, it held that the plaintiff did state a claim regarding a promise for a certain type of employment upon which she relied to her detriment. However, where ambiguity exists such that it becomes uncertain whether a contract exists, the claim will fail. *See, e.g. Camosy Inc. v. River Steel Inc.*, 253 Ill. App.3d 670, 191 Ill.Dec. 706, 709–10, 624 N.E.2d 894, 897–98 (1993); *LaBolle v. Metropolitan Sanitary Dist.*, 253 Ill.App.3d 269, 195 Ill.Dec. 748, 752, 629 N.E.2d 56, 60 (1992).

The Plaintiff flight attendants in this case make the same error as the Defendant employer in *Falk*; they argue broadly that the "promise" for a promissory estoppel claim must allege the existence of a promise to [be] employ[ed] for a certain duration. *Id.* at 1081. While this is not the case, Defendant Executive Flight fails to present a claim that an unambiguous promise was made for anything other than employment for a fixed duration—services on April 11. Given that shortfall and that Defendants have not alleged more than a vague promise or intention to perform particular services on that day, the Court cannot find that Executive Flight has pled an unambiguous promise sufficient to support a promissory or equitable estoppel claim. Therefore, Plaintiff's motion to dismiss Counts III and IV of Defendants' counterclaims is granted.

### CONCLUSION

Based on the reasoning stated above, the Court grants Defendants' partial motion to dismiss the Individual Defendants as parties to Plaintiffs' Title VII and ADEA claims, and grants Plaintiffs' motion to dismiss Defendants counterclaims Counts I through IV.

The Court has engaged in a lengthy legal discussion of the various claims involved in this matter and is still left with this query: Having established to this Court's satisfaction that they were at-will employees and that their tenure involved such a short period of time, what relief do the plaintiffs see that they are entitled to? The Court wishes to see the parties in chambers to explore this question on the date provided on the front of this order.