BRENDA PERRY, Plaintiff-Appellant, v. MARGARET SMITH MURTAGH, as Special Adm'x of the Estate of Charles J. Smith, Deceased, Defendant-Appellee.

First District (2nd Division)   No. 1—94—3891

Opinion filed March 5, 1996.

Lawrence W. Leck & Associates, Ltd., of Chicago (Lawrence W. Leck, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Anne Scheitlin Johnson, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Brenda Perry filed this medical malpractice action to recover damages for injuries allegedly sustained during and following the course of an abdominal hysterectomy performed by defendant's decedent, Dr. Charles Smith. Following a jury trial in November 1993, Dr. Smith was found not guilty. Plaintiff appeals from that judgment, questioning whether (1) the circuit court erred in directing a verdict against her on the *res ipsa loquitur* count; (2) defense closing argument was improper; (3) the circuit court erred in allowing testimony not previously disclosed pursuant to former Supreme Court Rule 220 (134 Ill. 2d R. 220) (repealed eff. January 1, 1996); (4) the verdict was against the manifest weight of the evidence; and (5) plaintiff was denied a fair trial.[1] We affirm in part and reverse in part and remand for reasons noted below.

---

[1] Plaintiff's statement of facts contains no references to the record on appeal, as required by Supreme Court Rule 341(e)(6). 155 Ill. 2d R. 341(e)(6). De-

Evidence was adduced relative to plaintiff's second amended, two-count complaint and defendant's answer thereto. At the close of plaintiff's case, defendant's motion for a directed verdict was denied as to plaintiff's negligence count, but allowed as to her *res ipsa loquitur* count. To conform the pleadings to the proof, plaintiff sought and received leave to file a third amended complaint. Counts I and II of plaintiff's third amended complaint alleged that Dr. Smith negligently performed the abdominal hysterectomy on August 18, 1980, and failed to render proper post-operative care; count III sought damages pursuant to the doctrine of *res ipsa loquitur*. The court struck count III and refused plaintiff's tender of Illinois Pattern Jury Instructions, Civil, No. 105.09 (3d ed. 1990), embodying the doctrine of *res ipsa loquitur*. The jury found for defendant, as earlier noted. Plaintiff's post-trial motion for a new trial was denied. This appeal followed.

At trial, plaintiff testified that in July 1980, she was referred to Dr. Smith because of menstrual problems, which he diagnosed as fibroid tumors, and recommended surgery. Plaintiff testified to having undergone the recommended hysterectomy and to the subjective complications which thereafter developed, implying they were caused by defendant's decedent in having performed the operation negligently and in having rendered post-operative care negligently, as well as in failing to discover and treat properly a ureter injury occasioned by the operation. She testified to subsequent surgical procedures required, together with her asserted pain, suffering, disability and loss of earnings.

Video evidence deposition testimony of Sister James Anthony Baksa was introduced by plaintiff at trial. Sister Baksa testified that she heard Dr. Smith tell plaintiff's mother, while they were in plaintiff's hospital room, that he had made a mistake and had made a cut in the tube leading from plaintiff's bladder to her kidney. An Asian doctor was also present during this conversation. On cross-examination, Sister Baksa testified that she and plaintiff have been close friends for 20 years. She was present with plaintiff in her hospital room almost every day following the surgery, remembered that she may have seen Dr. Smith on other occasions, but recalled hearing Dr. Smith speak only on the single occasion outlined above. She did not recall hearing plaintiff respond in any way to Dr. Smith's purported admission.

---

fendant renews her motion to dismiss the appeal on this basis, which motion was previously denied by this court. Although her motion is meritorious, we elect to consider the appeal on its merits and the motion is again denied.

Dr. Jin Jyung, a senior resident in August 1980, testified by deposition, first as defendant's witness and then as plaintiff's witness. He gave plaintiff a physical examination upon her admission to the hospital, noted that she suffered from heavy and irregular bleeding, and recommended a total abdominal hysterectomy. Dr. Jyung assisted in plaintiff's surgery. If plaintiff's ureter had been cut or nicked during the operation, it would have been noted in the chart, but was not. Dr. Jyung saw no urine in the surgical area during the procedure. The operational report indicated that adhesions (scar formations that cause organs to stick together) were present in the abdominal area and removed during the operation.

Plaintiff presented Dr. William Matviuw, a physician specializing in obstetrics and gynecology, as her sole expert witness. In Dr. Matviuw's opinion, Dr. Smith deviated from the standard of care when he performed the abdominal hysterectomy knowing there were dense adhesions that made it difficult to see the ureter. Dr. Smith could have employed either of two procedures that would have identified the location of the ureter relative to the operative field. The first procedure would have involved the use of ureteral catheters, which would have helped to identify the ureter in the pelvic region. Alternatively, Dr. Smith could have consulted a urologist to perform a pyelogram, also known as an IVP, which would have involved an X ray of the kidney region. In Dr. Matviuw's opinion, the ureter was cut due to Dr. Smith's failure to identify its location, causing injuries of which plaintiff complained.

When Dr. Matviuw was asked whether this type of injury occurs to the ureter in the absence of negligence, defendant objected that the anticipated testimony was improper because Dr. Matviuw had never expressed a *res ipsa loquitur* opinion at any time prior to trial. Plaintiff subsequently withdrew the question.

Dr. William Tito testified for the defense that on August 28, 1980, as Dr. Smith's surgical consultant, he examined plaintiff and noted a partial small bowel obstruction. In his opinion, plaintiff had an ileus, or a paralyzed bowel which tends to recuperate on its own over a period of time. An ultrasound examination revealed unidentified fluid in plaintiff's pelvis. Subsequent to the ultrasound report, Drs. Tito and Smith performed an exploratory laparotomy on plaintiff. They did not seek the assistance of a urologist for the procedure because the bowel was very irritated and manipulation of the bowels by the urologist would have risked breaking into the bowels. A urologist would not have been able to perform any type of reparative surgery. The fluid later was found to be urine; drains were placed in the abdominal area to eliminate the urine. Neither physician saw a leak

and could not determine whether the injury was to the bladder or the ureter. In Dr. Tito's opinion, plaintiff had no symptoms of ureter complications before the procedure was performed.

Dr. Eugene DiMarco, a urologist, consulted with defendant's decedent on plaintiff's condition on September 1, 1980. A test revealed an obstruction of her right lower ureter. If he had been present during the exploratory laparotomy, he would not have performed a loop laparoscopy because the trauma to the patient would have been too great. In Dr. DiMarco's opinion, the leaking urine was caused by an impingement on the ureter, which compromised the blood supply and caused some necrosis.

The defense also called Dr. John Isaacs, a gynecological oncologist and gynecologist, as its expert. Dr. Isaacs was of the opinion that Dr. Smith was within the standard of care in performing the surgery when he proceeded with the abdominal hysterectomy, even after he found the adhesions in plaintiff's pelvic area, and that he properly identified the ureters. According to the operational report, Dr. Smith used the intrafascial technique, which was "the one technique you can use that protects the ureter from damage." He saw no evidence in the operational report of a cut, nick, or trauma to the ureter. In Dr. Isaacs' opinion, the ureter, already in an inflamed or weakened condition, probably popped a little hole during the surgery, which then caused urine to leak into the pelvic cavity. The tugging needed to release the adhesions and plaintiff's chronic pelvic infection added to the cause of the injury.

In Dr. Isaacs' opinion, Dr. Smith complied with the standard of care during the post-operative period before the exploratory laparotomy was performed. The differential diagnosis after the first surgery indicated that plaintiff may have had either a bowel obstruction or an ileus. Plaintiff had no symptoms of leaking urine. Dr. Isaacs stated that a cut or ligated ureter may not cause any symptoms in a patient. Dr. Smith did not violate the standard of care by not consulting a urologist before the second operation because there were no indications that a problem existed in the urinary tract.

Defendant's urological expert, Dr. James Faulkner, testified that the urinary leaking was most likely caused by a loss of blood supply to the ureter. He explained that when the blood supply to the ureter is cut off, the tissue will not receive any oxygen, causing it to die; the pressure of the fluid coming from the kidney then perforates the ureter, causing the leak.

As earlier recounted, the jury found defendant's decedent, Dr. Smith, not guilty of professional negligence in plaintiff's care and treatment; the circuit court denied plaintiff's motion for post-trial relief; and plaintiff timely filed a notice of appeal.

I

Plaintiff's first contention is that the circuit court erred in directing a verdict and refusing to submit to the jury her *res ipsa loquitur* negligence count. Defendant counters that plaintiff failed to present expert testimony establishing that her injuries ordinarily would not have happened without negligence.

On a motion for directed verdict, the circuit judge must view all the evidence in a light most favorable to the nonmovant and decide whether a verdict for the nonmovant could ever stand. *Spidle v. Steward*, 79 Ill. 2d 1, 7, 402 N.E.2d 216 (1980) (*Spidle*); *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).

■ The doctrine of *res ipsa loquitur*, which is applicable to medical malpractice actions, permits circumstantial evidence as proof of negligence where direct evidence is primarily within the control of defendant. *Taylor v. City of Beardstown*, 142 Ill. App. 3d 584, 592, 491 N.E.2d 803 (1986). Once properly invoked, the doctrine operates to shift the burden of going forward with the evidence to defendant, although any presumption of negligence may then be rebutted by defendant. *Taylor*, 142 Ill. App. 3d at 592.

■ To establish *res ipsa loquitur*, plaintiff must demonstrate that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, and (2) by an agency or instrumentality within defendant's exclusive control. *Dyback v. Weber*, 114 Ill. 2d 232, 242, 500 N.E.2d 8 (1986). With respect to the first element of *res ipsa loquitur*, plaintiff need only present evidence reasonably showing facts exist which allow an inference that the occurrence is one that ordinarily does not occur in the absence of negligence. *Coffey v. Brodsky*, 165 Ill. App. 3d 14, 22, 518 N.E.2d 638 (1987). Such an inference cannot be based solely upon the fact of a rare and unusual result (*Taylor*, 142 Ill. App. 3d at 592), but such evidence must be coupled with proof of a negligent act. *Spidle*, 79 Ill. 2d at 10. The circuit court must decide in the first instance, as a matter of law, whether the doctrine should be applied or not. *Spidle*, 79 Ill. 2d at 7.

In *Spidle*, our supreme court discussed the quantum and quality of evidentiary proof necessary to maintain a medical malpractice action based on *res ipsa loquitur* and negligence. 79 Ill. 2d at 4. There, plaintiff developed a vaginal fecal fistula following a supracervical hysterectomy. Plaintiff sued the physician, and the circuit court directed a verdict for defendant on the *res ipsa loquitur* counts at the close of plaintiff's case. The issue before the court was whether plaintiff introduced enough evidence to show that the injury ordinarily would not have happened without negligence. *Spidle*, 79

Ill. 2d at 8. Plaintiff's expert testified that plaintiff's injury normally would not be expected to result from a hysterectomy. Additional evidence was presented that the operation was inadvisable given plaintiff's condition. The supreme court held that, although expert testimony did not conclusively establish the injury would not have happened in the absence of negligence, the additional evidence showing the operation was inadvisable could have led a reasonable person to conclude that the injury, more probably than not, resulted from defendant's negligence. *Spidle*, 79 Ill. 2d at 8-10. Therefore, the *res ipsa loquitur* counts should have been submitted to the jury. *Spidle*, 79 Ill. 2d at 11.

Plaintiff here maintains there was sufficient evidence to demonstrate that her injury ordinarily does not happen in the absence of negligence. She points to testimony by Dr. Matviuw that Dr. Smith was negligent in cutting the ureter and testimony from defendant's expert that the incidence rate of ureteral injuries resulting from a hysterectomy was about 2.5%. In addition, there is Sister Baksa's testimony that Dr. Smith admitted cutting the ureter.

■ The instant case is very similar to *Spidle*. As in *Spidle*, the jury could have inferred evidence of a rare and unusual event, based upon the low ureteral injury incidence rate, coupled with proof of a negligent act. Viewing the evidence in the light most favorable to plaintiff, the facts reasonably support an inference that the subject injury does not ordinarily occur without negligence. Significantly, the circuit court in the case *sub judice* permitted the negligence count to survive defendant's motion to dismiss. Under similar circumstances, the supreme court in *Spidle* observed, "[t]he evidence sufficient to hold defendant liable under negligence specifically does not eliminate the *res ipsa loquitur* doctrine; rather, the foundation for it and the inference of negligence permitted under it were strengthened (Prosser, Torts sec. 40, at 231-32 (4th ed. 1971)), at least to the extent of presenting a jury question." *Spidle*, 79 Ill. 2d at 12. The same circumstances obtain in the present case.

There is no question raised concerning the other element essential to plaintiff's theory, defendant's exclusive control. The circuit court erred in directing a verdict on the *res ipsa loquitur* count, requiring reversal and remandment as to plaintiff's count III.

We proceed to consider errors alleged to have occurred at trial on the professional negligence counts.

## II

Plaintiff argues that the circuit court erred in allowing defendant's improper closing argument. Defendant responds that the court

properly acted within its discretion and any error was cured because plaintiff's objections were sustained.

An attorney is permitted wide latitude in closing argument, and it must be clearly improper and prejudicial to support reversal. *Guzeldere v. Wallin*, 229 Ill. App. 3d 1, 13, 593 N.E.2d 629 (1992). Comments on evidence during closing argument are proper if they are proved either by direct evidence or are fairly and reasonably inferable from the facts. *Guzeldere*, 229 Ill. App. 3d at 13.

■ The first allegedly improper comment occurred when defense counsel waved a $10 bill in front of the jurors and told them that if they did not think $100,000 was a lot of money, they should reach into their pockets and throw away some of their own money. Plaintiff claims that this inflammatory remark suggested to the jurors that any money awarded to plaintiff would be coming out of their pockets. Although the remark was ill-advised, the jury never reached the issue of damages, because it found Dr. Smith not guilty. Therefore, plaintiff suffered no prejudice from this remark. Furthermore, any error was cured when the circuit court sustained plaintiff's objection. See *Atwood v. Chicago Transit Authority*, 253 Ill. App. 3d 1, 14, 624 N.E.2d 1180 (1993).

■ The other allegedly improper comment occurred when defense counsel told the jury that Dr. Matviuw had been involved in more medical malpractice cases than all the attorneys in the courtroom, a comment not based on the evidence. The circuit court cured any error, however, by sustaining plaintiff's objection and advising the jury to disregard the evidence.

### III

■ Plaintiff next submits that the circuit court erred in allowing Dr. Faulkner to give testimony not previously disclosed pursuant to former Rule 220 (which applied at the 1993 trial). Defendant maintains that the allegedly improper evidence was not opinion testimony, but merely recited facts contained in a medical record.

At trial, plaintiff objected to Dr. Faulkner's testimony that he reviewed flow sheets containing information as to plaintiff's urinary output following surgery. Dr. Faulkner explained that flow sheets are a graphic depiction of the overall state of the patient, which include recordings of the patient's blood pressure, pulse, temperature, and urinary output. Dr. Faulkner stated that he added plaintiff's urinary output for the 10-day period following surgery and computed the average to be 1,000 cubic centimeters per day. He noted that urinary output is ordinarily 1,200 to 1,300 cubic centimeters per day.

In pertinent part, former Rule 220(b) stated: "In order to insure

fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed ***." 134 Ill. 2d R. 220(b). Former Rule 220(c)(1) provided that upon being served with Rule 220 interrogatories, a party retaining an expert witness had to disclose the subject matter of the expert's expected testimony, the expert's opinion on the matter, the basis for that opinion and the expert's qualifications. 134 Ill. 2d R. 220(c)(1); *Bloomquist v. Ely*, 247 Ill. App. 3d 656, 663, 617 N.E.2d 474 (1993).

Here, Dr. Faulkner did not render an opinion concerning plaintiff's urinary output, but added the urinary output over a number of days as set forth in the flow sheets and computed the average. This recital of facts contained in a medical record does not constitute opinion testimony; therefore, there was no Rule 220 violation. *Cf. Pharr v. Chicago Transit Authority*, 220 Ill. App. 3d 509, 518, 581 N.E.2d 162 (1991).

There was no error in allowing this testimony.

## IV

■ Plaintiff next submits that the verdict was against the manifest weight of the evidence in light of Dr. Smith's admission that he made a mistake during the operation.

A jury's finding will not be disturbed unless, considering all the evidence in a light most favorable to the prevailing party, the jury's conclusion is palpably erroneous and wholly unwarranted. *McCall v. Chicago Board of Education*, 228 Ill. App. 3d 803, 806, 593 N.E.2d 621 (1992). The fact that the jury could have drawn a different inference or conclusion from the evidence is not a basis for setting aside its verdict; a reviewing court will not sit as a second jury to consider the nuances of the evidence or demeanor and credibility of the witnesses. *Laport v. Lake Michigan Management Co.*, 252 Ill. App. 3d 221, 225-26, 625 N.E.2d 1 (1991). Even uncontradicted evidence is not a basis for overturning a jury verdict if the jury reasonably might have doubted the credibility or accuracy of the witnesses' testimony. *Laport*, 252 Ill. App. 3d at 226.

In the instant case, plaintiff relies on the video evidence deposition of Sister Baksa, who stated that when she visited plaintiff at the hospital in late August 1980, she heard Dr. Smith say, "I must have made a mistake. The knife must have slipped, and there's a cut in the tube from the bladder to the kidney." In reaching her conclusion, however, plaintiff discounts other evidence presented in the case, such as Dr. Jyung's testimony that if the ureter were cut during the operation, it would have been noted in the medical chart; Dr. Tito's

opinion that plaintiff had no symptoms of ureter complications following surgery; Dr. Isaacs' testimony that there was no evidence of a cut to the ureter and Dr. Smith complied with the standard of care during the performance of the surgery and the post-operative care; and Dr. Faulkner's opinion that the urinary leaking was most likely caused by a loss of blood supply to the ureter.

Based upon the totality of the evidence, the jury's verdict as to Dr. Smith's negligence was neither palpably erroneous nor wholly unwarranted.

## V

■ Plaintiff's final argument is that erroneous trial rulings deprived her of a fair trial.

Parties are not entitled to error-free trials, but fair trials, free of substantial prejudice. *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 184, 640 N.E.2d 948 (1994). A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected. *Netto*, 266 Ill. App. 3d at 184.

Plaintiff points to two alleged trial errors in this case. First, she maintains that the circuit court erred when it refused to allow Dr. Matviuw to testify that a barium enema should have been performed sooner. At trial, defendant objected that this testimony violated former Rule 220 because Dr. Matviuw never disclosed in any prior opinion that a barium enema should have been performed earlier. The court asked plaintiff's counsel to direct it to that portion of Dr. Matviuw's deposition where he testified that the barium enema should have been performed sooner, but counsel was unable to do so. Therefore, the court sustained defendant's objection.

A reviewing court will not search the record for material upon which to base a reversal; unless reference is made to the record concerning evidence supporting a reversal, such claimed errors will not be considered. *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051 (1980); *In re Village of Bridgeview, Cook County, Illinois, Special Assessment*, 139 Ill. App. 3d 744, 753, 487 N.E.2d 1109 (1985). Here, plaintiff fails to indicate where in the record any opinion about the barium enema was disclosed in Dr. Matviuw's deposition. Without reference to the record, there is no basis to disturb the circuit court's ruling.

Next, plaintiff identifies error during the cross-examination of Dr. Matviuw when defense counsel asked, "You have certainly given more than the fifty [depositions] that I have available here today ***, right?" The circuit court sustained plaintiff's objection, informed the jury that it is inappropriate for a lawyer to testify to the jury, and

struck that testimony. Because the court sustained the objection and admonished the jury that counsel's comments were not evidence, any error was cured. See *Lecroy v. Miller*, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995).

Accordingly, the judgment of the circuit court is affirmed as to counts I and II, and reversed and remanded for trial on count III of plaintiff's third amended complaint.

Affirmed in part; reversed in part and remanded for trial as directed.[2]

SCARIANO and BURKE, JJ., concur.

---

[2]On November 20, 1995, the supreme court entered an order providing that discovery rules amended on June 1, 1995, apply to cases filed after January 1, 1996, and to cases pending on that date. The order states:

"The order entered June 1, 1995, amending various rules and effective January 1, 1996, shall apply to all cases filed after such effective date as well as all cases pending on such effective date, provided that any discovery order entered in any such case prior to January 1, 1996, shall remain in effect unless and until amended by the trial court.

All cases pending on the effective date shall hold a case management conference pursuant to [amended] Rule 218 not later than July 1, 1996." Official Reports Advance Sheet No. 26 (December 20, 1995), M.R. 3140.