YONG CHUL KWON, Indiv. and as Father and Next Friend of Soo Yeon Kwon, Plaintiff-Appellant, v. M.T.D. PRODUCTS, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—95—4200

Opinion filed November 12, 1996.

Peter R. Coladarci, Ltd., of Chicago (Peter Coladarci, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (John Bell, Peter Nicholson, Thomas Fegan, and Mindy Kallus, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Soo Yeon Kwon (Soo), by her father and next friend Yong Chul Kwon (Kwon), appeals from the circuit court's order denying her motion for judgment notwithstanding the verdict pursuant to section 2—1202(b) of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1202(b) (West 1994).

Kwon filed a products liability action against M.T.D. Products, Inc. (M.T.D.), for injuries six-year-old Soo suffered on July 21, 1987, after attempting to jump onto the back of a riding lawn mower manufactured by M.T.D. and driven by Soo's aunt, Cecilia Ford. Ford,

the mower's owner, did not see Soo on the rear of the mower when she placed it in reverse. The rotating cutting blades sliced through part of Soo's left knee and foot.

Kwon's complaint alleged that the lawn mower was unreasonably dangerous in five respects: the mower's cutting blades operated when driven in reverse; the mower's design did not include an adequate blade-braking mechanism; no labels on the mower warned users of its dangerous condition and potential for injury; no instructions warned users of its dangerous condition and characteristics; and the mower was otherwise unreasonably dangerous.

As a defense to liability, M.T.D. offered evidence that it subsequently added a safety feature to its mowers after manufacturing Ford's mower. Kwon moved *in limine* to bar M.T.D. from mentioning this safety feature at trial. The circuit court permitted M.T.D. to introduce the evidence in order to show that the development of the feature was not feasible at the time M.T.D. manufactured Ford's mower. At the same time, however, the court prohibited M.T.D. from offering evidence that no other manufacturers used a similar safety feature, evidence that M.T.D. was a "leader in industry safety," and any other evidence addressing M.T.D.'s due care.

At trial, Kwon's expert witness, John Sevart, testified that M.T.D.'s mower was unreasonably dangerous because the mower should have had a safety feature preventing the mower's blades from operating when placed in reverse. Several other companies filed patents for similar "no-mow-in-reverse" systems before April 1980, when M.T.D. manufactured Ford's mower.

In response, M.T.D. introduced testimony that the mower was not unreasonably dangerous and that plaintiffs misused the mower by allowing children to play around and ride on the mower. At the time of the accident, Ford's three-year-old son was riding on the mower with her, as he often did. Soo also had ridden on the mower several times before with her father.

M.T.D.'s chief engineer, Gerald Plamper, testified that the mower was reasonably safe. Several labels on the mower warned users against allowing children near the mower. Ford's mower had been altered from the time it left M.T.D.'s control, specifically, warning labels had been removed, a lever on the mower was broken, and the mower's seat had been replaced.

Plamper testified that although M.T.D. and other lawn mower manufacturers considered developing a no-mow-in-reverse feature before 1980, no one yet had established the safety or reliability of the feature. Plamper asserted he developed a no-mow-in-reverse mower for M.T.D. after April 1980, which no other manufacturer had yet

developed. M.T.D. was the first manufacturer actually to produce a mower containing the no-mow-in-reverse feature.

At the close of the evidence, M.T.D. unsuccessfully moved for a directed verdict. The jury subsequently found for M.T.D. Kwon filed an unsuccessful motion for judgment notwithstanding the verdict. 735 ILCS 5/2—1202(b) (West 1994). Kwon appeals.

Kwon argues that the circuit court abused its discretion by admitting evidence of the no-mow-in-reverse feature and of M.T.D.'s compliance with industry safety standards. The admission of evidence is within the sound discretion of the circuit court, which will not be reversed absent clear abuse. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 92, 658 N.E.2d 450, 454-55 (1995). Evidentiary rulings will not be reversed unless the error "was substantially prejudicial and affected the outcome of trial." *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471, 569 N.E.2d 167 (1991).

Kwon first argues that the circuit court erroneously allowed M.T.D. to introduce evidence that in 1981 it developed a no-mow-in-reverse feature and installed the feature on all its mowers. Kwon claims that this evidence did not establish the nonfeasibility of the feature on Ford's mower, but proves only M.T.D.'s lack of fault and exercise of due care, and is therefore inadmissible. M.T.D. counters that testimony regarding its use of the safety feature is directly relevant to the feasibility question of adding the feature to its mowers before 1981.

■ In order to prevail on a strict liability theory, plaintiff must establish that the injury resulted from an unreasonably dangerous condition of the product, which existed at the time it left defendant's control. *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 215-16, 412 N.E.2d 959, 962 (1980). At trial, Kwon attempted to establish the unreasonably dangerous element by offering evidence of an available safety feature, which was feasible for M.T.D. to install on its mowers before 1981. Kwon clearly did not want the jury to learn, however, that M.T.D. later began installing a similar feature on all its mowers.

Parenthetically, this case is unusual in that defendant, not plaintiff, sought to introduce evidence of a subsequent remedial measure taken by defendant, typically sought to be established by plaintiff.

■ Evidence of a subsequent remedial measure may not be used to prove defendant's culpability; it may, however, be offered to establish the feasibility of a safer design if defendant disputes the issue. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01, 657 N.E.2d 926, 932 (1995); *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 14, 541 N.E.2d 643, 647-48 (1989). This rule is based

on public policy principles, including the desire to encourage manufacturers to improve their products and make them safer, without fear that these improvements later could be used as evidence against them. *Smith v. Black & Decker (U.S.), Inc.*, 272 Ill. App. 3d 451, 456, 650 N.E.2d 1108, 1113 (1995).

M.T.D. offered testimony that it developed the no-mow-in-reverse feature after manufacturing Ford's mower; it was the first mower manufacturer to use this feature; and no other manufacturers had yet developed the feature for their own mowers. This provided indirect evidence of nonfeasibility, from which a jury could infer that the use of the safety feature was not feasible before 1981 because no one else had used or developed the no-mow-in-reverse feature until M.T.D. did so in 1981.

■ Kwon claims, however, that the circuit court erroneously admitted evidence of M.T.D.'s no-mow-in-reverse feature because the evidence is probative only of due care. In strict liability cases, a defendant will be held liable for creating an unreasonably dangerous product regardless of fault. *Cunningham v. MacNeal Memorial Hospital*, 47 Ill. 2d 443, 453, 266 N.E.2d 897, 903 (1970). Evidence of defendant's lack of negligent conduct, or exercise of due care, is therefore irrelevant and should not be admitted. *Nave v. Rainbo Tire Service, Inc.*, 123 Ill. App. 3d 585, 591-92, 462 N.E.2d 620, 625 (1984). Admission of this evidence constitutes grounds for reversal if it improperly misled the jury into believing defendant could not be liable because "it was not 'at fault,' had done nothing 'wrong' and had exercised all due care." *Nave*, 123 Ill. App. 3d at 591, 462 N.E.2d at 625.

■ Any evidence introduced by M.T.D. that proves only its lack of negligence or reasonable care would not be admissible. In the present case, however, evidence of the safety feature supports M.T.D.'s assertion that it was not feasible for M.T.D. to use the safety feature before 1981. Although several manufacturers sought patents for their version of the no-mow-in-reverse feature in the 1970s, no one actually developed the product until 1981. A jury could infer from this evidence that the inclusion of a safety feature on the lawn mower would not have been feasible until someone actually manufactured this feature.

In addition, Kwon cannot now complain that the evidence misled the jury, because Kwon himself raised the issue of whether M.T.D. could have installed a safety feature on Ford's mower. Kwon first offered evidence of the safety feature through Sevart, his expert witness, who testified that the feature was feasible in 1980. Sevart stated that M.T.D. could have installed a safety device on the lawn mower

and listed the names of several patents for a safety feature sought by other lawn mower manufacturers as early as 1975.

This testimony opened the door for M.T.D.'s rebuttal evidence through testimony of its own expert, Plamper. Kwon's attorney then thoroughly cross-examined Plamper, who was asked why he waited until 1981 to invent and develop his own version of the no-mow-in-reverse feature when sketches and plans for similar safety features existed six years earlier. He testified that designs of potential safety features may have been created in the 1970s, but the actual production of such a feature was not feasible until 1981. The circuit court therefore did not abuse its discretion by admitting this evidence.

■ Kwon next argues that M.T.D. violated the court's order not to introduce evidence of its due care. In order for the violation of an *in limine* order to serve as the basis for a new trial, the order must be specific in its prohibitions. In addition, any violations of the order must be clear. *Chiricosta v. Winthrop-Breon*, 263 Ill. App. 3d 132, 149, 635 N.E.2d 1019, 1032 (1994); *Schaffner v. Chicago & North Western Transportation Co.*, 161 Ill. App. 3d 742, 760, 515 N.E.2d 298, 309 (1987), *aff'd*, 129 Ill. 2d 1, 541 N.E.2d 643 (1989). Furthermore, the violations must have deprived plaintiff of a fair trial. *Schaffner*, 161 Ill. App. 3d at 760.

■ Kwon points to statements made by Plamper, asserting that they were relevant only to due care. During M.T.D.'s direct examination of Plamper, the circuit court asked Plamper if he obtained a patent for the no-mow-in-reverse feature. He responded that neither he nor M.T.D. ever attempted to obtain a patent because they wanted the feature to be available to the entire industry. Defense counsel then asked if anyone had since copied the device, and Plamper responded in the negative. Kwon now objects to these responses as improper evidence of due care. The record reflects, however, that Kwon did not object to the testimony at the time it was presented.

Kwon's failure to timely object to the testimony at trial precludes him from raising this issue on appeal. *Liddle v. Cepeda*, 251 Ill. App. 3d 892, 896, 623 N.E.2d 849 (1993). Absent waiver, Plamper's testimony did not violate the *in limine* order, and its admission did not prejudice Kwon. Viewed in the light most favorable to M.T.D. (*Perry v. Murtagh*, 278 Ill. App. 3d 230, 239, 662 N.E.2d 587 (1996)), Plamper's testimony shows only that M.T.D. planned to share its technology with other manufacturers which already knew of the technology and which had prepared similar designs. His testimony did not make M.T.D.'s actions appear unduly generous or careful.

Kwon also challenges M.T.D.'s questioning of its expert, Sevart. On cross-examination, over Kwon's objections, M.T.D. asked Sevart

whether he had ever purchased any M.T.D. lawn mowers containing the no-mow-in-reverse feature. Sevart testified regarding his opinion of the nature of mowers manufactured by M.T.D. before 1981; however, M.T.D.'s question addressed his ownership of mowers manufactured after 1981. Sevart's ownership of mowers manufactured after 1981 does not help explain why M.T.D. could not manufacture a similar mower before 1981. Arguably, Sevart's response, that he is an expert on mowers who owns an M.T.D. mower, helps prove defendant's reputation for manufacturing high quality mowers.

■ Responding to the question of whether other manufacturers currently produced no-mow-in-reverse mowers, Sevart asserted that only M.T.D. and its subsidiaries manufactured the mower. The circuit court's order explicitly prohibited M.T.D. from introducing any evidence that no other manufacturer had ever used a no-mow-in-reverse feature. The question asked Sevart directly related to that issue, and Sevart's response helped establish M.T.D.'s due care. The circuit court therefore committed error in admitting this evidence.

■ Kwon further argues that M.T.D.'s attorney made two statements during closing arguments that directly violated the circuit court's order. First, the attorney mentioned that M.T.D. was "the first" to develop a no-mow-in-reverse concept. In addition, the attorney noted that M.T.D. is "a leader in industry safety."

An attorney retains wide latitude in closing argument. Statements must be clearly improper and prejudicial to support reversal. *Perry*, 278 Ill. App. 3d at 238. Comments on the evidence during closing argument are proper if proven by direct evidence or if fairly and reasonably inferable from the facts. 278 Ill. App. 3d at 238.

With regard to the first contested statement, M.T.D.'s attorney simply restated a fact already in evidence; however, M.T.D.'s attorney violated the circuit court's order by referring to M.T.D. as an industry leader. Upon Kwon's objection, however, the court immediately struck the latter statement from the record and instructed the jury to disregard it, noting that the statement was irrelevant to the case. The court also repeatedly told the jury that the attorney's comments should not be considered evidence. The court's actions cured any error or potential for prejudice caused by the attorney's statement. *Lecroy v. Miller*, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995).

■ Kwon next contests the admissibility of evidence of M.T.D.'s policy of complying with industry safety standards. On direct examination, Plamper testified that M.T.D. employees "will not produce a unit, any machines, any consumer product which would not meet all

the requirements of any safety standards which cover that product, period." Kwon argues that this statement emphasized defendant's conscientiousness and due care and did not establish whether the product at issue conformed to industry standards.

Evidence of industry standards may be relevant and admissible in a products liability action to determine whether a condition is unreasonably dangerous. *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1184 (7th Cir. 1992); *Ruffiner v. Material Service Corp.*, 116 Ill. 2d 53, 58, 506 N.E.2d 581, 584 (1987). Kwon correctly argues, however, that M.T.D.'s evidence does not establish whether Ford's mower complied with existing industry standards. Instead, the testimony shows only that M.T.D. makes special efforts to comply with industry standards. Plamper's statement improperly addresses M.T.D.'s due care and should not have been admitted.

█ Although Kwon acknowledges that each of the above-mentioned errors individually would not be enough to require reversal, he argues that the cumulative effect of the errors was significant enough to warrant a new trial.

An erroneous ruling on evidence is harmless if the ruling did not affect the result and the result was the only one warranted by other evidence in the case. *Holston v. Sisters of the Third Order of St. Francis*, 247 Ill. App. 3d 985, 999, 618 N.E.2d 334, 344 (1993), *aff'd*, 165 Ill. 2d 150, 650 N.E.2d 985 (1995). Moreover, a jury's finding will not be disturbed unless the verdict was "palpably erroneous and wholly unwarranted." *Perry*, 278 Ill. App. 3d at 239.

Plaintiff relies on *Nave v. Rainbo Tire Service, Inc.*, a case involving similar facts and issues, to support his argument that the cumulative effect of the court's errors warrants reversal. In *Nave*, however, the lower court erroneously admitted detailed testimony that explained a process described in a large manual, which also should not have been admitted. Conversely, in the present case, the errors that occurred constituted small portions, no more than a few lines, of all the testimony at trial and are insignificant when compared to the errors that occurred in *Nave*.

The cumulative effect of the errors here is harmless and therefore insufficient to require reversal. M.T.D. submitted sufficient evidence at trial to support both of its defenses: first, that it was not feasible to create a safety device at the time M.T.D. manufactured Ford's lawn mower; and second, that the lawn mower was not unreasonably dangerous as long as children were kept away from it. This evidence was sufficient to support a jury verdict for defendant.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

SCARIANO and BURKE, JJ., concur.